SEXTON, APPELLEE, *v.* SEXTON, APPELLANT.

[Cite as Sexton v. Sexton (1978), 60 Ohio App. 2d 339.]

(No. CA 545—Decided October 11, 1978.)

*Mr. Ronald D. Cramer,* for appellee.
*Mr. Stephen F. Tilson,* for appellant.

*Per Curiam* This is an appeal from the denial of a change of custody from the plaintiff-appellee-father to the defendant-appellant-mother.

It is apparent from the trial court's six page memorandum, styled "Findings of Fact and Conclusions of Law," that it believed the best interests of the children (a boy, Todd, four years of age as of June 1976 and Jennifer, a girl, age two as of June 1976) would be best served by a change of custody to the mother, partly at least in view of her changed circumstances, but that limiting provisions of R. C. 3109.04 (B) prohibit such an order in view of its finding that none of the three limiting conditions set forth by R. C. 3109.04 (B)[1] as a

---

[1] The provisions of R. C. 3109.04 (B) provide:

"The court shall not modify a prior custody decree unless it finds, based on facts which have arisen since the prior decree or which were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian, and that the modification is necessary to serve the best interests of the child. In applying these standards, the court shall retain the custodian designated by the prior decree, unless one of the following applies:

(1) The custodian agrees to a change of custody.

(2) The child, with the consent of the custodian, has been integrated into the family of the person seeking custody.

(3) The child's present environment endangers significantly his physical health or his mental, moral, or emotional development and the harm likely to be caused by a change of environment is outweighed by his advantages of such change to the child."

condition precedent to a change of custody were established.

In our view, the threshold issue presented by the facts as found by this court is whether the trial court had the power to look behind the original order of custody granted to the father in the September 8, 1976, judgment granting a divorce.

The factual background resulting in custody with the father is succinctly summarized by the trial court as follows:

"At the time the divorce between the parties was granted, and indeed throughout the original divorce action, Rebecca Cary resided apart from the plaintiff in the State of Kentucky in poverty. *At that time, she had inadequate funds with which to care for the parties' children. She also had inadequate funds with which to employ a lawyer on her behalf with respect to the divorce action her husband had filed against her.*

In June of 1976, she, without benefit of legal advice, relinquished the children to the plaintiff *and on the same day signed a Separation Agreement prepared by his attorney, purporting to grant 'permanent' custody to him. He had indicated to her that he would not take the children so as to provide for their immediate support unless she would sign this Separation Agreement.* Subsequently, then, the husband immediately took the children away from Kentucky and brought them into this jurisdiction, where they have since resided with his parents. The plaintiff lives and works in Columbus, Ohio, as he has since the Agreement was executed, and essentially sees the children on weekends." (Emphasis added.)

After remarrying, the mother moved for a change of custody in December 1976 and the trial court conducted an extensive hearing on the motion of March 2, 1977. The trial court found the marriage of the mother and her current husband to be "stable and their environment suitable for the children to be placed with them." In denying the motion for change of custody, the trial court concluded:

"Since the best interest of the children *is not the only standard to be considered,* and since the court must go on after making such a finding to find that one of the three restrictive components of R. C. 3109.04 (B) is also satisfied, which the court does not find in this case, the motion for a

change of custody as filed by the defendant must be overruled." (Emphasis added.)

In our view, the facts in this case require an application of Civil Rule 60 (B) (4) which provides:

"(B) On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons:\*\*\*

"(4)\*\*\*it is no longer equitable that the judgment should have prospective application;\*\*\*."

When the trial court discovered for the first time after the judgment was rendered that the father's custody and control of the children was obtained only after the mother was compelled, by her concern for her two small children, to sign a separation agreement in order to obtain the father's agreement to care for the children, it was, in the words of Civil Rule 60 (B) (4) "no longer equitable that the judgment" of September 8, 1976, granting the father custody of the children "should have prospective application."

To the contrary, the trial court was, in our view, constrained to reconsider the best interest of the children in light of the then existing circumstances uninhibited by the limiting provisions of R. C. 3109.04 (B). In reaching this conclusion, we recognize that no specific Civil Rule 60 (B) motion for relief from judgment was filed. However, we find that rule merely restates the court's inherent power on the facts he found. In view of the trial court's finding of fact with respect to the nature of the mother's relinquishment of control over the children, we find that the trial court had a *sua sponte* duty to consider the motion for a change of custody to be additionally a Civil Rule 60 (B) (4) motion for relief from the "prospective application" of the custody aspect of the judgment of September 8, 1976.

We construe the three assignments of error to constitute a single claim that the judgment is contrary to law and for the reasons set forth, we sustain that assignment of error.

*Judgment reversed.*

RUTHERFORD, P. J., PUTMAN and DOWD, JJ., concur.